UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL L. S.,

                      **Plaintiff,**

  vs.                                                  3:18-CV-689
                                                          (MAD)
NANCY A. BERRYHILL,
*Acting Commissioner of Social Security*,

                      **Defendant.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**THE DEHAAN LAW FIRM P.C.**         **JOHN W. DEHAAN, ESQ.**
300 Rabro Drive, Suite 101
Hauppauge, New York 11788
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **LAUREN E. MYERS, ESQ.**
Office of Regional General Counsel - Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       On June 30, 2014, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging disability beginning February 1, 2009.[1] *See* Administrative Record ("R.") at 161-64. Administrative Law Judge ("ALJ") Marie Greener conducted a hearing on June 29, 2016, and, on August 26, 2016, issued a decision holding that Plaintiff was not disabled. *See id.* at 45-55, 63-

---

[1] Plaintiff later amended the alleged disability onset date to March 7, 2014. *See* R. at 67.

81. On May 15, 2018, the Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review. *See id.* at 4-7.

Plaintiff has appealed the SSA's decision to this Court. *See* Dkt. No. 1 at 1-2. For the following reasons, Plaintiff's motion is granted in part, and the case is remanded to the SSA.

## II. BACKGROUND

### A. Plaintiff's Medical History

On March 7, 2014, Plaintiff began treatment with Dr. Erik Garita Jimenez, a Family Medicine and Sleep Disorder Specialist. *See* R. at 225. After Plaintiff underwent a sleep test on March 8, 2014, Dr. Jimenez diagnosed him with sleep apnea. *See id.* at 233-37.

Plaintiff saw Dr. Jimenez on March 10, 2014 for burns that he sustained after he accidentally poured water into hot cooking oil while he was frying food at his home. *See id.* at 249. On September 26, 2014, Dr. Jimenez reported that "[m]y professional opinion is that my patient was very fatigued and sleepy due to his sleep apnea condition which impaired his thought process and was the causes [sic] of this accident." *See id.*

On September 17, 2014, Dr. Jimenez noted that Plaintiff has sleep apnea and insomnia, and that his "lack of sleep causes mild depression, anxiety and an inability to concentrate at times." *See id.* at 225-26. Dr. Jimenez also reported that Plaintiff had been using the CPAP machine for six months with "little results," and that Plaintiff sleeps 2.5 to 3 hours of quality sleep per night. *See id.* at 225. Dr. Jimenez believed that Plaintiff was capable of working in a low stress environment, but that he should not operate a tractor trailer or other heavy equipment or machinery. *See id.* at 227. Additionally, Dr. Jimenez noted that "[h]is [c]ondition is a danger to himself and the public," and that "[a]t times he has confusion, memory loss and decreased attention and concentration." *See id.* Finally, Dr. Jimenez recorded that he had seen Plaintiff in

his office six times in six months. *See id.* Plaintiff underwent another sleep examination on October 10 through October 11, 2014. *See id.* at 228-32.

In a letter dated January 22, 2015, Dr. Jimenez wrote that Plaintiff "experiences insomnia, excessive daytime sleepiness, hypertension, memory problems, mild depression, anxiety attacks, pour [sic] concentration and comprehension, morning headaches, moodiness, and fatigue." *See id.* at 245. Additionally, Dr. Jimenez noted that the March 2014 home sleep study indicated that Plaintiff has obstructive sleep apnea, and the October 2014 overnight sleep study showed severe obstructive sleep apnea. *See id.* As for Plaintiff's ability to work, Dr. Jimenez stated that Plaintiff should not drive tractor trailers, large trucks, forklifts, farm machinery, or any other similar equipment, and should not use industrial power tools or factory equipment for any sustained period of time. *See id.* Additionally, Dr. Jimenez believed it would be difficult for Plaintiff "to perform any office or clerical work because he becomes sleepy very easily and has problems with concentration and focusing," and that "[h]e may require rest periods at unknown intervals during a workday due to his symptoms and medications." *See id.* at 245-46. Finally, he opined that Plaintiff "is capable of working in a low stress environment but his symptoms will likely prohibit him from producing good results on the job." *See id.* at 246. Dr. Jimenez attached a list of Plaintiff's "Examinations, Tests and Results" to that letter. *See id.* at 247.

On April 29, 2016, Dr. Jimenez reported that "[t]here does not appear to be any significant changes in [Plaintiff's] condition or health since his [January 22, 2015] report." *See id.* at 244. Dr. Jimenez indicated that he continued to see Plaintiff every six to eight weeks. *See id.*

**B.      Plaintiff's Non-Medical History**

Plaintiff is sixty-three years old and worked as a freight truck driver from September 1991 until February 2009. *See id.* at 161, 193. Plaintiff graduated high school and has a commercial

driver's license. *See id.* at 70. Plaintiff reports that he stopped working "[b]ecause of my condition(s)," and now resides in Costa Rica for most of the year. *See id.* at 68-69, 177.

In a function report dated September 5, 2014, Plaintiff reported that he lives alone, prepares his own meals, goes outside daily, drives "very locally," shops for groceries, pays bills, and handles his own finances. *See id.* at 184-88. Still, Plaintiff claims to spend less time with other people since the onset of his conditions because he gets frustrated easily. *See id.* at 189. Additionally, Plaintiff reported that he "can't do work because I can fall asleep easily," and that he is often tired, feels weak, and does not have energy. *See id.* at 184-89. Finally, Plaintiff indicated that he cannot do "heavy physical work," *id.* at 185, he has "concentration and memory impairments," *id.* at 191, and he cannot stand or walk for prolonged periods of time, *id.* at 189.

**C.    Disability Application**

On June 30, 2014, Plaintiff filed an application for DIB, alleging that he has been disabled since February 1, 2009. *See id.* at 48. As part of that application, Plaintiff underwent a psychiatric consultive examination by Dr. Sara Long and an internal medicine consultive examination by Dr. Gilbert Jenouri on October 2, 2014. *See id.* at 213-16, 218-21.

At the psychiatric exam, Dr. Long noted that Plaintiff reported a cognitive disorder, but that he did not have any trouble following and understanding simple directions and performing simple tasks. *See id.* at 215. Additionally, Plaintiff was able to pay attention and concentrate, maintain a regular schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate with others, and adequately manage stress. *See id.* Dr. Long recommended that Plaintiff "follow through with corrections to CPAP machine and allow time for adjustment to the machine." *See id.* Additionally, Dr. Long noted that vocational counseling or substance use evaluation might be appropriate. *See id.* At Plaintiff's internal medicine consultive examination

with Dr. Jenouri, Plaintiff reported that he has obstructive sleep apnea, knee pain, hypertension, and a "history of anxiety attacks, depression, poor concentration and comprehension, moodiness, and fatigue, possibly associated with obstructive sleep apnea." *See id.* at 218. Still, Dr. Jenouri concluded that Plaintiff was "[s]table" and found no restrictions based on his examination. *See id.* at 221.

On October 8, 2014, Plaintiff's disability claim was denied. *See id.* at 82-87. That denial was signed by Dr. E. Kamin, a state agency psychologist, who found that Plaintiff did not have any severe mental impairments. *See id.* at 85. Plaintiff requested a hearing, which occurred on June 29, 2016 before ALJ Greener in Albany, New York. *See id.* at 63-81. At the beginning of the hearing, Plaintiff's counsel informed ALJ Greener that there was no "other evidence outstanding that would relate to disability," and ALJ Greener marked the file "complete." *See id.* at 66. Plaintiff then amended his alleged disability onset date to March 7, 2014. *See id.* at 67. ALJ Greener questioned Plaintiff about his education, work history, medical history including his sleep apnea, anxiety and depression, living conditions, and ability to do daily activities. *See id.* at 68-78. Plaintiff reported that he sees a sleep specialist in Costa Rica named Dr. Gereda Jimenez, who has prescribed him a CPAP machine. *See id.* at 74. Plaintiff also testified that, as his treating physician, Dr. Jimenez has ordered sleep studies, discussed the results of the studies with Plaintiff, and prescribed him anti-anxiety and anti-depressive medications. *See id.* at 78-79.

On August 26, 2016, ALJ Greener held that Plaintiff was not disabled because he did not have a severe impairment or combination of impairments during the relevant time period. *See id.* at 54. On October 11, 2016, Plaintiff's former attorney Douglas A. Kugal submitted a letter to the SSA appealing the ALJ's decision. *See id.* at 159. In that letter, Kugal asserted that he was enclosing "a copy of the treating physician's curriculum vitae," and asked the Appeals Council to

5

translate the document and enter it into the record. *See id.* The envelope carrying the letter was marked "received" by a mailroom on October 14, 2016, but there is no copy of Dr. Jimenez's *curriculum vitae* in the Administrative Record. *See id.* at 159-60.

On May 15, 2018, the Appeals Council denied Plaintiff's request for review. *See id.* at 4.

**D.     Procedural History**

Plaintiff initiated this action against the Social Security Commissioner (the "Commissioner") on June 13, 2018, and on October 31, 2018, submitted a motion in support of the appeal. *See* Dkt. Nos. 1, 7. Plaintiff argues that the case should be remanded because (1) the Administrative Record before the Court is incomplete, (2) the Appeals Council failed to consider new evidence that Plaintiff submitted as part of his appeal, and (3) the ALJ did not properly weigh the evidence or fulfill her duty to develop the record. *See* Dkt. No. 7 at 18-29. On January 23, 2019, the Commissioner filed her response. *See* Dkt. No. 12.

For the following reasons, Plaintiff's appeal is granted, and the case is remanded for further proceedings consistent with this opinion.

### III. DISCUSSION

**A.     The ALJ's Decision**

For purposes of DIB, a person is disabled when he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the

6

claimant is not capable of continuing in his prior type of work, the
Commissioner must find him disabled if (5) there is not another
type of work the claimant can do." The claimant bears the burden
of proof on the first four steps, while the Social Security
Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)). At step two, the ALJ must determine, (1) "whether there is an underlying medically determinable physical or mental impairment(s)," and (2) whether that impairment or combination of impairments significantly limits the individual's ability to perform basic work activities. *See* 20 CFR §§ 404.1521, 404.1522.

After determining that Plaintiff met the insured status requirements of the Social Security Act until December 31, 2014, ALJ Greener applied the above five-step analysis. *See* R. at 50-54. First, the ALJ noted that Plaintiff did not engage in substantial gainful activity from the alleged disability onset date of March 7, 2014 through December 31, 2014, his date last insured. *See id.* at 50. Moving to step two, although the ALJ found that Plaintiff did not have any mental impairments, she concluded that Plaintiff did have the following medically determinable impairments: obstructive sleep apnea, insomnia, and hypertension. *See id.* at 50-51. However, the ALJ concluded that those impairments "did not significantly limit his ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments." *See id.* at 51-54.

In reaching that decision, the ALJ gave great weight to Dr. Jenouri's conclusion that Plaintiff had no physical limitations because "it is consistent with his examination findings," which found that Plaintiff was in no acute distress, and had no issues with walking, squatting, changing for the exam, or getting on and off the exam table. *See id.* at 52-53. The ALJ also gave great weight to (1) Dr. Long's findings that Plaintiff had no limitations on his ability to follow and

understand simple directions, perform simple and complex tasks, maintain a regular schedule, learn new tasks, make appropriate decisions, relate with others, and managing stress, and (2) Dr. E. Kamin's conclusion that Plaintiff did not have a "severe" medically determinable mental impairment, because the opinions "are consistent with one another and with Dr. Long's examination findings, which . . . were benign." *See id.* at 53. On the other hand, the ALJ gave Dr. Jimenez's opinions no weight because the record did not have any "information regarding his credentials" or "treatment notes from this provider." *See id.* at 54.

Thus, ALJ Greener concluded that Plaintiff was not disabled during the relevant time period, and denied his claim for DIB. *See id.*

**B.    Appeals Council Decision**

Plaintiff appealed ALJ Greener's decision to the Appeals Council and submitted additional medical records in support of his appeal. *See id.* at 59-62, 159. The additional medical records showed that Plaintiff began seeing a psychiatrist, Dr. Mercedes Rivas Torres, on September 29, 2016 for his severe sleep apnea and the conditions and symptoms resulting from it, and that a psychologist, Dr. Marcela Barguil Gallardo, performed a neuropsychological evaluation of Plaintiff on October 19 and 28, 2016. *See id.* at 14-15, 23-32. Plaintiff also submitted both doctors' *curriculum vitae*. *See id.* at 16-22, 33-44.

The Appeals Council rejected the additional evidence and denied Plaintiff's appeal. *See id.* at 5. Specifically, the Appeals Council did not consider Dr. Gallardo's *curriculum vitae* because the "evidence does not show a reasonable probability that it would change the outcome of the decision." *See id.* Additionally, the Appeals Council did not consider the additional medical records or Dr. Torres's *curriculum vitae* because that evidence did not relate to the period at issue

8

in this case, which required the ALJ to determine whether Plaintiff was disabled beginning on or before December 31, 2014. *See id.*

C. **Analysis**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the administrative record to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted).

The treating physician rule states that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2)). When an ALJ refuses to assign a treating physician's opinion controlling weight, a number of factors must be considered to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the SSA's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c). After accounting for

these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Burgess*, 537 F.3d at 129 (internal quotation marks and citation omitted). "Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* at 129-30 (internal quotation marks and citation omitted).

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). "[B]ecause 'the ALJ generally has an affirmative obligation to develop the administrative record,' the ALJ may not disregard or decline to address a treating physician's medical opinion on the grounds that the information provided is incomplete without first attempting to obtain the missing information.'" *Barbera v. Barnhart*, 151 Fed. Appx. 31, 33 (2d Cir. 2005) (quoting *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996)).

Here, although ALJ Greener acknowledged that Dr. Jimenez was a treating source, she gave his opinions no weight. In doing so, the ALJ stated:

> The record contains no information regarding his credentials. Nor are there any treatment notes from this provider. In fact, other than the consultative examiners' clinical findings, the only objective evidence of record is the claimant's sleep study, which merely shows he has sleep apnea. There is also a September 2014 pulmonary function test from Costa Rica, which was "completely normal." Furthermore, I do not find Dr. Garita Jimenez' assessment consistent with the claimant's aforementioned activities.

*See* R. at 54.

By disregarding Dr. Jimenez's opinion without first attempting to obtain his notes and *curriculum vitae*, the ALJ failed to satisfy her affirmative obligation to develop the administrative record. *See Barbera*, 151 Fed. Appx. at 33. The record clearly indicated that Dr. Jimenez was a sleep specialist and had been treating Plaintiff for his sleep apnea over a long period of time. *See*

R. at 227 (Dr. Jimenez noting, on September 17, 2014, that he had seen Plaintiff in his office six times in six months); *id.* at 244 (Dr. Jimenez noting, on April 29, 2016, that Plaintiff continued to be under his care and was in his office every six to eight weeks since January 22, 2015); *id.* at 245 (Dr. Jimenez reporting, on January 22, 2015, that Plaintiff had been his patient since March 7, 2014); *id.* at 247 (Dr. Jimenez summarizing past examinations and tests done on Plaintiff). In light of that evidence, ALJ Greener must have known that Dr. Jimenez's opinions were significant and should have presumptively been given controlling weight if they were supported by medical evidence and consistent with the other evidence in the record. *See Burgess*, 537 F.3d at 128. However, ALJ Greener mistakenly gave Dr. Jimenez's opinions no weight without first trying to obtain his credentials or treatment notes. *See* R. at 54.

The Commissioner argues that ALJ Greener was not under an obligation to seek treatment notes from Dr. Jimenez because there were "'no obvious gaps in the administrative record.'" *See* Dkt. No. 12 at 14 (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)). In *Rosa*, the Second Circuit found that "[t]here were numerous gaps in the administrative record that should have prompted the ALJ to pursue additional information regarding [the claimant's] medical history," where the claimant had identified a number of treating physicians but the ALJ never attempted to obtain medical records from those physicians. *See Rosa*, 168 F.3d at 79-80. Similarly here, the gaps in the record were obvious, because although the record included ample evidence to show that Dr. Jimenez was Plaintiff's treating physician, it was missing Dr. Jimenez's *curriculum vitae* and treatment notes. *See* R. at 54. The lack of individualized support for Dr. Jimenez's opinions "does not mean that such support does not exist; [the physician] might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.

1998). Such an omission is particularly understandable here, where Dr. Jimenez is a physician in Costa Rica, who presumably has little experience submitting documents in support of an application for United States Social Security benefits.

Accordingly, the case is remanded for the ALJ to determine whether additional records reflecting the full extent of Plaintiff's treating relationship with Dr. Jimenez can be obtained.[2] *See Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009) (remanding where the ALJ failed to develop a comprehensive record before making his decision); *see also Holloman v. Comm'r of Soc. Sec.*, No. 17-CV-4386, 2018 WL 4861378, *7 n.4 (E.D.N.Y. Sept. 28, 2018) (remanding for the ALJ to "determine whether additional records reflecting the full extent of Plaintiff's treating relationship with [the treating physician] can be obtained"); *Rodriguez v. Berryhill*, No. 16-CV-9951, 2018 WL 1508739, *4-5 (S.D.N.Y. Mar. 27, 2018) (remanding where the ALJ discounted a treating physician's opinion for failing to include individual support for his conclusions because the ALJ did not first attempt to get that support into the record).

### IV. CONCLUSION

After careful review of the record, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that the Commissioner's decision denying disability insurance benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of

---

[2] Because the case must be remanded for the ALJ's failure to develop the record, the Court will not address Plaintiff's remaining arguments at this time.

42 U.S.C. § 405(g)[3], for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

    **ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

    **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 28, 2019
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[3] Sentence four of Section 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).